## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------------------
BREYONA STEWART                          :
871 N. 42nd Street, Apt B                :      Civil Action No.: _____
Philadelphia, PA 19104                   :
                                         :      JURY TRIAL DEMANDED
                          Plaintiff,     :
                                         :
            v.                           :
                                         :
COSI, INC.                               :
500 Rutherford Ave, Suite 130            :
Charlestown, MA 02129                    :
                                         :
                          Defendant.     :
-----------------------------------------------------------------
```

## COMPLAINT – CIVIL ACTION

Plaintiff, Breyona Stewart ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Defendant, Cosi, Inc. ("Defendant"), alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action contending Defendant violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code §§ 9-1101, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and retaliated against Plaintiff for attempting to exercise her rights under the same.

## PARTIES

2.      Plaintiff is a citizen of the United States and the Commonwealth of Pennsylvania, and currently resides at 871 N. 42nd Street, Apt B, Philadelphia, PA 19104.

3.      Upon information and belief, Defendant is a for-profit corporation incorporated under the laws of the State of Delaware with a principal place of business located at 500 Rutherford Ave, Suite 130, Charlestown, MA 02129.

4.      Upon information and belief, Defendant is registered to do business in the Commonwealth of Pennsylvania and actively operates at least five restaurant locations within Pennsylvania, including a restaurant located at 3500 Civic Center Blvd, Philadelphia, PA 19104.

## JURISDICTION AND VENUE

5.      Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6.      On or about June 18, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually-filed with the Philadelphia Commission on Human Relations ("PCHR"), thereby satisfying the requirements of 42 U.S.C. §§ 12117(a); 2000e-5(b) and (e).  Plaintiff's Charge was docketed as EEOC Charge Number: 530-2020-04498.  Plaintiff's Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

7.      By correspondence dated December 6, 2021, Plaintiff received a Notice of Rights to Sue from the EEOC regarding her Charge of Discrimination, advising her that she had ninety (90) days to file suit against Defendant.

8.      This action is authorized and instituted pursuant to the ADA, 42 U.S.C. § 12101, *et seq.*, the PFPO, Phila. Code §§ 9-1101, *et seq.*, and the FMLA, 29 U.S.C. § 2601*, et seq.*

9.      Plaintiff filed the instant action within the statutory time frame applicable to her claims.

10. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12. This Court has supplemental jurisdiction over Plaintiff's PFPO claims, pursuant to 28 U.S.C. § 1367, because those claims arise out of the same nucleus of operative fact as the federal law claims.

13. The venue in this district is proper pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

14. Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15. On or about October 18, 2018, Defendant hired Plaintiff as a cashier at its restaurant located at 3500 Civic Center Blvd, Philadelphia, PA 19104 ("Defendant's restaurant").

16. From October 18, 2018 until in or around November 2019, Plaintiff worked forty (40) hours per week. In or around November 2019, as a company-wide cost-saving measure, Defendant reduced the hours of its employees.

17. In accordance with this company-wide cost-saving measure, Plaintiff's hours were reduced to twenty-seven (27) hours per week. Still, from December 31, 2018 until December 31, 2019, Plaintiff worked more 1,250 hours at Defendant's restaurant.

18. At all times material hereto, Plaintiff received positive performance reviews, occasional praise, and no justifiable discipline.

19.     By way of background, beginning in or around January 2019, Plaintiff developed autoimmune disease symptoms and began receiving treatment and care at Penn Medicine in the University City neighborhood of Philadelphia, PA.

20.     While receiving treatment for her symptoms in or around February 2019, Plaintiff used sick time to take off work for approximately six (6) days, on or around February 1 through February 6, 2019.  Plaintiff provided Defendant a note from her doctor for this absence.

21.     In or around March 2019, Plaintiff consulted with her doctor, who suggested Plaintiff ask Defendant about potentially taking FMLA leave when her condition rendered her unable to work.

22.     In or around March 2019, Plaintiff asked her general manager, A.J. Allen ("Mr. Allen") about the availability of FMLA leave.  Mr. Allen indicated he was unsure and informed Plaintiff he would ask about it.

23.     In or around May 2019, Plaintiff again asked Mr. Allen about the availability of FMLA leave.  This time, Mr. Allen responded by stating Defendant probably does not offer such leave.

24.     Following this conversation, in or around May 2019, Plaintiff used sick time to take off for a period of eight (8) to twelve (12) days while receiving treatment for autoimmune symptoms that rendered her unable to work.

25.     In or around July 2019, Plaintiff was diagnosed with multiple sclerosis ("MS") and Lupus, two chronic auto-immune disorders.

26.     Plaintiff experiences a variety of symptoms due to her MS and Lupus including, but not limited to, body pain and aches, inflammation, swelling, heartburn and reflux, headaches, numbness and tingling in the extremities, stiffness, weakness, and fever.

27.     As such, Plaintiff's conditions qualify as a disability or disabilities within the meaning of the ADA and PFPO in that they substantially limit one or more major life activities.

28.     Both MS and Lupus alter the immune system, causing the immune system to attack the body's healthy tissue rather than only attacking infections.  As result, MS and Lupus patients often experience flare-ups of more severe symptoms when infected with viruses such as the flu, as the immune system directs its elevated response to the virus to healthy tissue as well.

29.     Both MS and Lupus may be treated using immunosuppressants that suppress the immune system to limit its production of the auto-antibodies that attack the body.  Because treatment can be immunocompromising, those with Lupus and/or MS are at a higher risk for contracting a virus, such as the flu.  Additionally, immunosuppressants also diminish the body's immune response to viruses such as the flu, meaning infected persons may experience more severe symptoms, a longer duration of illness, and more difficult recovery.

30.     While receiving treatment related to her symptoms and diagnoses, Plaintiff used sick time to take off of work for approximately three days, in or around July 22 through July 24, 2019.  Plaintiff provided Defendant a note from her doctor for this absence.

31.     Having taken time off for treatment, care, and diagnosis of her autoimmune conditions, on at least three occasions, Plaintiff informed Defendant that she suffered from underlying medical conditions and/or disabilities.

32.     Therefore, Defendant was aware of Plaintiff's medical condition and/or disability and regarded her as being disabled.

33.     Following her diagnosis, Plaintiff continued treatment for her medical conditions for the next six months and more.  Her treatment remains ongoing today.

34.    In addition to other care, remedies, and Plaintiff took a variety of medications to treat her conditions, including immunosuppressants.

35.    Following her diagnoses in July 2019, Plaintiff continued to work regular schedules at Defendant's restaurant, as her medical treatment managed her autoimmune symptoms.

36.    Plaintiff worked her scheduled shift on December 30, 2019.  On or about that date, Defendant requested Plaintiff supply an updated I-9 form in order to continue her employment with Defendant in 2020.

37.    On or about December 31, 2019, Plaintiff became infected with the seasonal flu.

38.    Due to her chronic autoimmune disorders and related treatment, Plaintiff experienced particularly severe flu symptoms and a flare-up of her autoimmune symptoms, including, but not limited to, joint pain, body aches, headaches, fever, respiratory problems, chills, weakness, numbness, dehydration, fatigue, and lack of appetite.

39.    On or about December 31, 2019, Plaintiff went to the hospital where she received treatment and care for her flu and autoimmune symptoms.  As part of her treatment, Plaintiff received an inhaler as well as a prescription for a pain-reliever.  Plaintiff's doctor also instructed her not to return to work while she was contagious.

40.    Plaintiff was scheduled to work at Defendant's restaurant on December 31, 2019.

41.    On or about December 31, 2019, Plaintiff called her general manager, Mr. Allen, informing him that she had the flu, which was exacerbated by her underlying autoimmune conditions, thereby reminding Defendant of her underlying medical condition and/or disability, of which Defendant was already aware.

42.     During this call with Mr. Allen, Plaintiff requested a reasonable accommodation in the form of time off from work in order to treat and recovery from her autoimmune and flu symptoms.

43.     Notably, neither Mr. Allen nor Defendant offered or mentioned Plaintiff's right to protected medical leave under the FMLA.

44.     That same day, on or about December 31, 2019, Defendant denied Plaintiff's request for leave and accommodation by terminating Plaintiff's employment.   Plaintiff later received a letter from Defendant stating Plaintiff "was an employee by Cosi from October 18, 2018 to December 31, 2019."

45.     Defendant's restaurant was closed on Wednesday, January 1, 2020 for the New Year holiday, as well as on Saturday, January 4, 2020 and Sunday, January 5, 2020 as Defendant's restaurant routinely did not operate on the weekends.   Plaintiff was next scheduled to work on Monday, January 6, 2020.

46.     On or about January 6, 2020, Plaintiff texted Mr. Allen informing him she still was sick and that she would bring in her I-9 documents and medical documentation upon her recovery. Plaintiff and Mr. Allen also talked over the phone that date, where Plaintiff relayed the same message.

47.     On or about January 9, 2020, Plaintiff's doctor cleared her to return to work.

48.     That same day, on or about January 9, 2020, Plaintiff went to Defendant's restaurant, where she attempted to supply Mr. Allen with the previously requested I-9 documentation as well as with medical documentation related to her time off.

49.     That same date, on or about January 9, 2020, Mr. Allen informed Plaintiff that Defendant had terminated her employment, and Plaintiff observed her name had been removed from the posted schedule for January 7, 2020 through January 13, 2020.

50.     Following her unlawful termination, Plaintiff applied for public assistance. In order to qualify for benefits, Plaintiff was required to show she no longer worked for Defendant. Plaintiff thus contacted Defendant's HR Department, seeking confirmation of her termination.

51.     On January 14, 2020, Plaintiff received a letter from Defendant that stated, "[Plaintiff] was an employee by Cosi from October 18, 2018 to December 31, 2019." This letter was signed by Defendant's Human Resources Manager, Wendi Barry.

52.     It is believed and therefore averred that Defendant interfered with Plaintiff's rights under the FMLA by failing to inform Plaintiff of her right to FMLA leave, failing to provide Plaintiff with the requisite twelve (12) weeks of job-protected FMLA leave, and/or terminating Plaintiff before she could use her FMLA leave or before her FMLA leave expired.

53.     It is further believed and therefore averred that Defendant terminated Plaintiff's employment because Plaintiff attempted to exercise her rights under the FMLA, i.e., in retaliation for attempting to exercise her rights under the FMLA.

54.     It is further believed and therefore averred that Defendant failed to accommodate Plaintiff in connection to her disabilities and terminated Plaintiff because of her actual/perceived disability, because Defendant regarded Plaintiff as disabled, and/or in retaliation for Plaintiff's request for a reasonable accommodation, in violation of the ADA and the PFPO.

55.     As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, health and/or retirement benefits, loss of potential

benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, and humiliation.

## COUNT I
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. 2601, *et seq.*
### INTERFERENCE AND RETALIATION

56.    Paragraphs 1 through 55 are hereby incorporated by reference as though the same were fully set forth at length herein.

57.    Upon information and belief, Defendant maintained fifty (50) or more employees within seventy-five miles (75) of the location where Plaintiff was employed.

58.    Upon information and belief, Defendant employs and employed fifty or more employees for at least twenty (20) workweeks in the current or preceding year, including the time period relevant to the allegations contained herein.

59.    Therefore, Defendant is a "covered" employer under the FMLA, meaning the provisions of the FMLA apply to Defendant.

60.    Plaintiff was an eligible employee under the FMLA, having worked for Defendant, a covered employer, for at least one year, and having worked more than 1,250 hours in the calendar year preceding her request for medical leave on or about December 31, 2019.

61.    Plaintiff was therefore entitled to up to twelve (12) weeks of unpaid leave for her serious health condition.

62.    Plaintiff provided adequate notice to Defendant of her need for medical leave by giving notice as soon as she became aware of the need for leave and as soon as was practicable, pursuant to 29 U.S.C. § 2612(e).

63.     Defendant willfully violated the FMLA by: (a) terminating Plaintiff in retaliation for requesting and seeking leave under the FMLA; and, (b) interfering with Plaintiff's rights to protected leave under the FMLA.

64.     The aforementioned actions of Defendant constitute both interference and retaliation violations of the FMLA.

65.     As a result of Defendant's actions, Plaintiff has suffered significant damages.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter a judgment in her favor and against Defendant, and grant her the maximum relief allowed by the law, including, but not limited to:

A.     Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.     Liquidated damages;

C.     Plaintiff's costs, disbursements, and reasonable attorneys' fees incurred in prosecuting this action;

D.     Pre-judgment interest in an appropriate amount; and

E.     Such other and further relief as is just and equitable under the circumstances.

F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT II**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101,** *et seq.*
**DISCRIMINATION AND RETALIATION**

66.     Paragraphs 1 through 65 are hereby incorporated by reference as though the same were fully set forth at length herein.

67.     At all times relevant hereto, Plaintiff was an employee within the meaning of the ADA, 42 U.S.C. § 12101, *et seq.*

68.     At all times relevant hereto, Defendant had at least fifteen (15) employees.

69.     Plaintiff is a qualified individual with a disability within the meaning of the ADA.

70.     As described above, Plaintiff's chronic autoimmune conditions substantially limit one or more major life activities.

71.     Plaintiff advised Defendant that she suffered from chronic autoimmune issues; thus, Defendant was aware of Plaintiff's disability and/or regarded her as being disabled.

72.     By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff on account of her disability, and/or in retaliation for Plaintiff requesting a reasonable accommodation in connection thereto.

73.     As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, bonuses, and compensatory damages in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.    Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D.    Pre-judgment interest in an appropriate amount;

E.    Such other and further relief as is just and equitable under the circumstances; and

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

**COUNT III**
**VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE**
**PHILA. CODE §§ 9-1101,** *et seq.*
**<u>DISCRIMINATION AND RETALIATION</u>**

74.    Paragraphs 1 through 73 are hereby incorporated by reference, as though the same were fully set forth at length herein.

75.    Plaintiff is a qualified individual with a disability within the meaning of the PFPO, Phila. Code §§ 9-1101, *et seq.*

76.    As described above, Plaintiff's disability substantially limited one or more major life activities.

77.     As Plaintiff advised Defendant of her disability, Defendant was aware of Plaintiff's disability and/or regarded Plaintiff as being disabled.

78.     By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the PFPO by terminating Plaintiff on account of her disability, and/or in retaliation for Plaintiff requesting a reasonable accommodation in connection thereto.

79.     As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.     Back wages, front pay, bonuses, and compensatory damages in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.     Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.     Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D.     Pre-judgment interest in an appropriate amount; and

E.     Such other and further relief as is just and equitable under the circumstances;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Michael Murphy, Esq.*      _
Michael Murphy, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: December 21, 2021

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.